**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

KEVIN GUYTON,                           :
                                        :     **Civil No. 3:11-CV-01390**
        Plaintiff,                      :
                                        :     **(Judge Caputo)**
        v.                              :
                                        :     **(Magistrate Judge Carlson)**
MR. LAPPIN, et al.,                     :
                                        :
        Defendants.                     :

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This is a *pro se* civil action brought on July 26, 2011, by Kevin Guyton
("Guyton"), a former federal inmate[1] who was previously housed in the United States
Penitentiary-Canaan ("USP-Canaan").  (Doc. 1)  Guyton's complaint named twelve
correctional staff, along with the warden at the penitentiary, the regional director of
the Bureau of Prisons ("BOP"), and the Director of the Bureau of Prisons as
Defendants.

In his complaint, Guyton alleged that these prison officials collectively violated
his constitutional rights by failing to appropriately respond to Guyton's requests for
a prison transfer to Hawaii, a transfer that Guyton alleged was necessary for security
reasons  because he was a federal witness in an ongoing murder case.  (Id.)  Guyton

---

[1]The Defendants now report that Guyton has completed his federal sentence,
and is currently being held at the Federal Detention Center Philadelphia on a
parole detainer

alleged that Defendants violated his constitutional rights by failing to accommodate this transfer request and then retaliated against him for his past assault of a corrections officer.  (Id.)

Specifically, Guyton alleged that Defendants Lappin and Norwood refused to investigate and respond to letters in which he asked to be transferred to another prison and to have his name removed from the BOP website because after he gave grand jury testimony in an ongoing murder case, he received a threatening letter from gang leaders.  (Id. at pp. 2, 4, 6-7)  Guyton contended that Defendant Holt, the Warden at USP-Canaan, did not enforce BOP policy which prohibits inmates in different institutions from communicating with one another without permission of the Wardens at both institutions.  (Id. at pp. 3, 7)  Guyton further alleged that Defendant Holt revoked his admission to a Residential Re-Entry Center ("RRC")  and refused to consider his release to his home state of Hawaii in retaliation for Guyton filing an administrative remedy.  (Id. at p. 10)

Guyton also alleged that Defendant Breckon, a Captain at USP-Canaan, separated Guyton from his cellmate in the Special Housing Unit ("SHU") because of fights, but then placed the inmates back together and the cellmate threatened to file an incident report if he refused the placement which would cause Guyton's November 2011 release date to be extended.  (Id. at p. 9)  In addition, Guyton stated that

Defendant Breckon  refused to respond to his request to have his location removed from the BOP website in order to stop the Black Guerilla Family from  tracking his whereabouts.  (Id. at p. 10)

Guyton's complaint sought damages from these prison officials, and also demanded wide-ranging injunctive relief in the form of court orders which would *inter alia*:  (1) direct that Guyton be housed in a half-way house in Hawaii, with the Bureau of Prisons providing him with a new wardrobe, and bus passes; (2) compel prison officials to give Guyton a single cell pending his removal to the prison of his choice in Hawaii; and (3) instructing the United States Department of Justice to meet with Guyton and assist him in filing a criminal complaint against people who he alleges attempted to coerce his testimony in some other proceedings.  ( Id.)  Along with his complaint, Guyton filed a motion for leave to proceed *in forma pauperis*, (Doc. 2) which we granted.  (Doc. 7)  We also directed service of this complaint on the Defendants, since at least some of the allegations and claims made by Guyton may warrant further response and consideration by the courts.

On March 16, 2012, the Defendants filed a motion to dismiss or, in the alternative for summary judgment in this case. (Doc. 42)  After an extension granted by the Court to the Defendants, the parties have now fully briefed this motion. Therefore, we will deem the motion to be ripe for resolution.  Our review of the motion, along with the contradictory submissions of the parties and evidentiary

materials submitted, leaves us convinced that the Plaintiff's complaint should be dismissed. Therefore, we recommend that this motion be granted.

## II.   Discussion

### A.   Motion to Dismiss-Standard of Review

Defendant filed a motion to dismiss or, in the alternative for summary judgment. (Doc. 42)  Defendant's motion to dismiss is made pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the jurisdiction of a federal court over the subject matter of the complaint.  Walls v. Ahmed, 832 F.Supp. 940, 941 (E.D.Pa.1993); Liakakos v. CIGNA Corp. 704 F.Supp. 583 (E.D.Pa.1988).  In reviewing a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party.  See Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir.1989); D.P. Enterprises, Inc. v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir.1984).  Lack of subject matter jurisdiction is a ground for dismissal and may be raised at any time by the parties or by the court sua sponte.  Walls, 832 F.Supp. 940, 941; Liakakos, 704 F.Supp. 583, 586.  Because at issue in a factual 12(b)(1) motion is the trial court's very power to hear the case there is substantial authority that the trial court is free to weigh the evidence and satisfy itself

as to the existence of its jurisdiction.  Mortensen v. First Fed. Sav. & Loan Ass'n., 549

F.2d 884, 891–92 (3d Cir. 1977).  Thus, the court may consider affidavits, depositions,

and testimony to resolve factual issues bearing on jurisdiction.  Gotha v. United States,

115 F.3d 176 (3d Cir.1997).

Rule 12(b) (6) of the Federal Rules of Civil Procedure, in turn, governs motions

to dismiss like the motion lodged by the Defendants in this case, and provides that a

complaint should be dismissed for "failure to state a claim upon which relief can be

granted."  Fed.R.Civ.P. 12(b)(6).  With respect to this benchmark standard for legal

sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has

noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of
> jurisprudence in recent years.  Beginning with the Supreme
> Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S.
> 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) continuing with
> our opinion in Phillips v. County of Allegheny, 515 F.3d 224,
> 230 (3d Cir.2008) and culminating with the Supreme Court's
> decision in Ashcroft v. Iqbal --- U.S. ----, 129 S.Ct. 1937, 173
> L.Ed.2d 868 (2009) pleading standards have seemingly shifted
> from simple notice pleading to a more heightened form of
> pleading, requiring a plaintiff to plead more than the possibility
> of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 2009 WL 2501662, at 7 (3d Cir. August 18,

2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir.1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled

to the assumption of truth." Id. at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B.   Summary Judgment-Standard of Review

In the alternative, the Defendants have moved for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.  Rule 56(a) of the Federal Rules of Civil Procedure provides as follows:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).[2]  For purposes of Rule 56, a fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  Haybarger v. Laurence Cnty. Adult Prob. & Parole, 667 F.3d 408, 412 (3d Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Id.  (quoting Anderson, 477 U.S. at 248-49).

---

[2]  The rule providing for summary judgment was previously set forth in Rule 56(c) of the Federal Rules of Civil Procedure, with some minor differences in the language then used.  The rule was amended in December 2010 to provide for the summary judgment standard in Rule 56(a), and by replacing the word "issue" with "dispute," which "better reflects the focus of a summary-judgment determination."  Rule 56, Advisory Committee Notes.

Accordingly, in support of a motion for summary judgment, the moving party must show that if the evidence of record were reduced to admissible evidence in court, it would be insufficient to allow the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 323 (1986). Provided the moving party has satisfied this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007). Instead, if the moving party has carried its burden, the non-moving party must then respond by identifying specific facts, supported by evidence, which show a genuine issue for trial, and may not rely upon the allegations or denials of its pleadings. See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007); see also Fed. R. Civ. P. 56(c).

In adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. Id. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Id. at 252; see also Big Apple

BMW, 974 F.2d at 1363.  In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant.  In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent.  It thus remains the province of the factfinder to ascertain the believability and weight of the evidence.

Id.  In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

### C.   Guyton Has Failed to Exhaust His Administrative Grievances, the Defendants Are Entitled to Qualified Immunity from Damages, and Guyton's Reuqest for Injunctive Relief is Now Moot Since the Plaintiff Has Completed Service of His Sentence

Here the Defendants argue in support of their motion to dismiss, or in the alternative for summary judgment that Guyton has failed to exhaust his administrative remedies through the BOP administrative grievance process before bringing this action in this Court.  (Doc. 46, p. 8)  Guyton admits to not exhausting his administrative remedies in his complaint, but asks the Court to rule that Plaintiff exhausted all

administrative remedies because he believed he was in imminent danger.  Defendants

argue that the failure to exhaust bars Guyton from litigating his claims in this Court.

(Id.).  We agree.

The Prison Litigation Reform Act ("PLRA") provides that "no action shall be

brought with respect to prison conditions under Section 1983 or any other federal

law...until such administrative remedies as are available are exhausted." 42 U.S.C. §

1997e(a).  The Third Circuit has made clear that the PLRA constitutes a bright-line

rule, and requires that inmate-plaintiffs must exhaust all available administrative

remedies before bringing a suit in federal Court challenging prison conditions.  See

Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Nyhuis v. Reno, 204 F.3d 65 (3d Cir.

2000).  The PLRA's exhaustion requirement applies to Bivens claims such as this

action.  Nyhuis, 204 F.3d at 68.  The exhaustion requirement is not a jurisdictional bar,

however, it is strictly enforced by the Courts mandated by a fundamental recognition

that § 1997e's exhaustion requirement promotes important public policy.  The Third

Circuit has noted:

> Courts have recognized myriad policy considerations in favor of
> exhaustion requirements.  They include (1) avoiding premature
> interruption of the administrative process and giving the agency a
> chance to discover and correct its own errors; (2) conserving scarce
> judicial resources, since the complaining party may be successful in
> vindicating his rights in the administrative process and the courts may
> never have to intervene; and, (3) improving the efficacy of the
> administrative process.  Each of these policies, which Congress seems

to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a).... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards.   And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency.... Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto.... In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained.  The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures.  All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir.2000) (citations omitted).  The United States Supreme Court has underscored that the PLRA's exhaustion requirement is applicable to all inmate suits concerning prison conditions, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983,

152 L.Ed.2d 12 (2002) (citation omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Spruill v. Gillis, 372 F.3d 218, 228-230 (3d Cir.2004).   Instead, courts have typically required across-the-board administrative exhaustion by inmate-plaintiffs who seek to pursue claims in federal court.  Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court.  Id. at 230.  The Third Circuit further explained that the "prison grievance procedures supply the yardstick for measuring procedural default."  Id. at 231.  In practice, the procedural default rule operates to bar an inmate-plaintiff from bringing suit in federal court if he has failed properly to pursue his grievance through the entire process prescribed by the prison's administrative grievance policy, including the intermediate and final stages of appeal.  Id. at 231-32. Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court;  see, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F.

App'x 178 (3d Cir. 2006), including requests for injunctive relief in a prison

context.  Ghana v. Holland, 226 F.3d 175 (3d Cir. 2000).

We now consider whether Guyton has properly fully exhausted his

administrative remedies before bringing suit.  Guyton concedes that he did not

exhaust his administrative remedies on the issues raised in his complaint and asks

the Court to rule that Plaintiff exhausted all administrative remedies because he

believed he was in imminent danger. (Doc. 1, p. 2)  However, Guyton's pleadings

belie this claim of imminent danger.  Guyton's complaint recites events which

occurred beginning in December 2009.  (Id.)  Thus, almost two years elapsed

between the triggering events which Guyton alleges placed him in imminent danger

and the filing of this lawsuit.  The passage of this span of many months between

these events and the filing of this lawsuit rebuts any claim that Guyton faced an

imminent or immediate danger.

Furthermore, it is evident that Guyton was fully able to pursue administrative

remedies during the many months embraced by this complaint at a time when he

now claims he faced an imminent danger.  In fact, Guyton filed four separate

administrative remedy requests during the time of the events of the complaint.

(Doc. 45, Ex. 1, p. 7)  The Request for Administrative Remedy (No. 612751-F1)

filed on October 27, 2010, contained Guyton's request for the Warden at USP-

Canaan to change his security classification so that he could be transferred to a

different institution because of his fear that inmates at USP-Canaan were communicating with other inmates at other institutions concerning his testimony as a witness in a prison murder case. (Id.) Guyton further explained that his security is at risk because he is a former leadership member of the Black Guerilla Family. (Id.). On November 4, 2010, the Warden denied the October 27, 2010, Request for Administrative Remedy. (Id.) Guyton did not appeal the Warden's response to the Regional or Central Offices. (Id.)

Plaintiff filed another Request for Administrative Remedy (No. 639575-F1) in which he stated that the denial of the Request for Administrative Remedy (No. 612751-F1) and the Warden's refusal to address the issue of inmate contact between inmates at different institutions have caused him to be coerced into his refusal to testify as a witness in the prison murder case. (Id.) On May 17, 2011, the Warden denied the Request for Administrative Remedy without a substantive response citing that there was no evidence Guyton attempted to informally resolve the issue at the institutional level prior to filing the Request for Administrative Remedy, Guyton was further advised that he could correct the error and resubmit his request. (Id.) Guyton did not correct the error by attempting to resolve the issue at the institutional level and instead submitted the same appeal in Request for Administrative Remedy (No. 639575-R1) to the BOP's Northeast Regional Office on June 3, 2011. (Id.) The Request for Administrative Remedy was rejected by the

BOP's Northeast Regional Office and Guyton was informed that he must first present his request at the institution and if he could correct the defect in his appeal, he could resubmit it within five days. (Id.) Guyton did not attempt to correct the defect or resubmit the Request for Administrative Remedy. (Id.)

Instead, on August 29, 2011, Plaintiff filed a Request for Administrative Remedy (No. 654347-F1) in which he stated that he felt threatened by his cellmate and requested to be moved. (Id.) This belated effort at exhaustion took place one month *after* Guyton filed his civil complaint on July 26, 2011. (Doc. 1) Once again, the Request for Administrative Remedy was denied without a substantive response because there was no evidence Guyton attempted to informally resolve the issue at the institutional level prior to filing the Administrative Remedy Request, Guyton was further advised that he could correct the error and resubmit his request. (Id.) Guyton did not file any further administrative requests or appeals while at USP-Canaan. (Id.)

Guyton acknowledges that his Request for Administrative Remedy No. 639575-F1 was dismissed in the complaint, but disagrees with the basis for the rejection of his administrative remedies claiming that he attempted to file an appeal at the BOP's Central Office, but Counselor Gambone failed to mail the appeal. (Doc. 1, ¶ 2) Plaintiff does not offer further explanation as to why he did not follow the appropriate administrative process and asks instead, "for Court to rule that

Plaintiff exhausted all administrative remedies to absolute best of his ability." (Id. at ¶ 5)

This exhaustion argument fails for two reasons.  First, it fails as a factual matter because Guyton disregarded the BOP regulations and instructions provided to him in the notices issued by the Administrative Remedy Coordinator and the BOP Northeast Regional Office.  Therefore, it appears to be beyond dispute that Guyton has procedurally defaulted in prosecuting and appealing his Requests for Administrative Remedies and, therefore, has failed to properly exhaust his administrative remedies as required by the PLRA.  Thus, as a result of Guyton's failure, he is now prohibited from pursuing his claims in federal court.

Second, it fails as a legal matter since it erroneously implies that a prisoner can sue first, and then exhaust administrative remedies later.  In this regard, Guyton fundamentally misconstrues the law regarding exhaustion of grievances.  Contrary to Guyton's views: " '[T]he ... rule ... we believe Congress intended is that inmates first test *and exhaust* the administrative process, and then, if dissatisfied, take the time necessary to file a timely federal action.' Nyhuis, 204 F.3d at 77 n. 12." Ahmed v. Dragovich, 297 F.3d 201, 207 n. 6 (3d Cir. 2002).

In sum, Guyton never properly exhausted prison grievances with respect to the claims which he advances in this litigation.  Therefore, the Defendants are entitled to dismissal of these claims on exhaustion grounds.

However, even if Guyton had stated a colorable and properly exhausted constitutional claim relating to the denial of his requests for a transfer to a halfway house in Hawaii, the Defendants are nevertheless entitled to qualified immunity on these claims for damages. In order to establish a civil rights claim Guyton must show the deprivation of a right secured by the United States Constitution or the laws of the United States. Satisfying these elements alone, however, does not guarantee that Guyton is entitled to recover damages from these public officials. Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223, 230 (2009). This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit." Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted). Qualified immunity:

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries. First, the court must evaluate whether the defendant violated a constitutional right. <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001), abrogated in part by <u>Pearson</u>, 555 U.S. 223; <u>Curley v. Klem</u>, 499 F.3d 199, 206 (3d Cir. 2007); <u>Williams v. Bitner</u>, 455 F.3d 186, 190 (3d Cir. 2006). If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor. <u>Saucier</u>, 533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. <u>Pearson</u>, 555 U.S. 230-232; <u>Saucier</u>, 533 U.S. at 201-02. The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right. <u>Williams</u>, 455 F.3d at 191 (citing <u>Saucier</u>, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." <u>Wilson</u>, 526 U.S. at 615. The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002)

(quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 236, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted.  Id.  Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity.  Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).")  Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often

be resolved on summary judgment. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In this case, prison officials were confronted by an inmate who was demanding a transfer to a specific location–Hawaii–and custodial status of his choosing.  To the extent that Guyton requested that he be transferred to some other prison in Hawaii, it is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. Moody v. Daggett, 429 U.S. 78, 88 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976).  Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." Id.  Similarly, it has long been recognized that prison transfer decisions, standing alone, do not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. See, e.g., Hassain v. Johnson, 790 F.2d 1420 (9th Cir. 1986); Serrano v. Torres, 764 F.2d 47 (1st  Cir. 1985).  Thus, even inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment.  See, e.g., Gov't of Virgin Island v. Gereau, 592 F.2d 192 (3d Cir. 1979)(transfer from Virgin Islands to mainland); Rodriguez-Sandoval v. United States, 409 F.2d 529 (1st Cir. 1969)(transfer from Puerto Rico to Atlanta).  In short, well-settled law establishes that prisoners have

no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215 225 (1976); Montanye, 427 U.S. at 242; Bulger v. U.S. Bureau of Prisons, 65 F.3d 48 (5th Cir. 1995); Marchesani v. McCune, 531 F.2d 459 (10th Cir. 1976).  Simply put, as a legal matter Guyton has no constitutional right to choose his prison.  Similarly, Guyton's demands specifying that he receive specific single cell housing accommodations fail since "[i]t is well-settled that prisoners do not have a due process right to be single-celled.  See Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)." Hodges v. Wilson, 341 F.App'x 846, 849 (3d Cir. 2009).  On these facts, given the state of the law in this field,  the Defendants simply could not have recognized that their actions in declining to transfer Guyton to the prison of his choice in Hawaii would violate "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999).   Therefore, the Defendants are entitled to qualified immunity on this claim.

Further, Guyton's efforts to characterize his lawsuit as a retaliation claim also fail.  A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must first prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered

adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). Thus, the legal predicate to any such claim is that prison officials retaliated against the prisoner because of his exercise of some constitutional right. Here, Guyton's retaliation claim is based on an assertion that the Defendants refused him a transfer to a halfway house in Hawaii in a retaliatory fashion because he had previously assaulted other prison staff. The simple rejoinder to this claim is that for inmates like Guyton assaulting prison staff is not constitutionally protected conduct. Therefore, the first element of a valid retaliation claim–that the inmate engaged in constitutionally protected activity–is utterly lacking in this case.

Furthermore, Guyton cannot defeat the Defendants' qualified immunity by arguing that their actions did not comport with internal agency policies. Such an argument is unavailing here. In this regard, it is well-settled that the doctrine of qualified immunity looks to the state of constitutional case law when determining whether specific rights were clearly established. Therefore, a failure–like the failure claimed here–which simply involves alleged non-compliance with agency policies, practices, or procedures does not defeat a qualified immunity defense when the plaintiff's constitutional rights were not clearly established. See, e.g., Davis v.

<u>Scherer</u>, 468 U.S. 183 (1984); <u>Bradley v. United States</u>, 164 F.Supp.2d 437 (D.N.J.

2001).

Thus, entirely aside from Guyton's failure to exhaust his administrative

remedies, Guyton's complaint in this case fails because the Defendants are entitled

to qualified immunity from damages.

Finally, given the representation that Guyton is no longer serving a federal

sentence, and is no longer housed in this district, his claims for injunctive relief are

now moot.  Indeed, as this Court has previously observed, in a case such as this,

where an inmate seeks injunctive relief against his jailers but is later transferred

from the prison where these injunctive claims arose:

> [H]is request[] to enjoin the defendants from interfering with his
> [rights] is academic. <u>See</u> <u>Muslim v. Frame</u>, 854 F.Supp. 1215, 1222
> (E.D.Pa.1994). In other words, [the prisoner-plaintiff's] transfer to
> another institution moots any claims for injunctive or declaratory
> relief. <u>See</u> <u>Abdul-Akbar v. Watson</u>, 4 F.3d 195, 206-07 (3rd Cir.1993);
> <u>Weaver v. Wilcox</u>, 650 F.2d 22, 27 (3rd Cir.1981).
>
> <u>Fortes v. Harding</u>, 19 F.Supp.2d 323, 326 (M.D.Pa.1998).

As the United States Court of Appeals for the Third Circuit has observed in

addressing inmate requests for injunctive relief:

> As a preliminary matter, we must determine whether the inmates'
> claims are moot because "a federal court has neither the power to
> render advisory opinions nor to decide questions that cannot affect the
> rights of litigants in the case before them." <u>Preiser v. Newkirk</u>, 422
> U.S. 395, 401 (1975) (quotations omitted); <u>see also</u> <u>Abdul-Akbar v.</u>
> <u>Watson</u>, 4 F.3d 195, 206 (3d Cir.1993). An inmate's transfer from the

facility complained of generally moots the equitable and declaratory claims. <u>Abdul-Akbar</u>, 4 F.3d at 197 (former inmate's claim that the prison library's legal resources were constitutionally inadequate was moot because plaintiff was released five months before trial).

<u>Sutton v. Rasheed</u>,  323 F.3d 236, 248 (3d Cir. 2003).

These principles control here, and compel dismissal of this injunction action as moot at this time since Guyton is no longer a federal prisoner, is no longer housed at the United States Penitentiary Canaan, and there is no indication that he will be housed at that facility in the foreseeable future.

## VI.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendant's Motion to Dismiss or, in the Alternative Motion for Summary Judgment (Doc. 42), be GRANTED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge,

however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 5th day of June 2012.

*__S/Martin C.  Carlson__*
Martin C. Carlson
United States Magistrate Judge